RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 26a0216p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

MARION SINCLAIR; TAWANDA HALL; CURTIS LEE;
CORETHA LEE; KRISTINA GOVAN,

> *Plaintiffs-Appellees*,

*v.*

ANDREW E. MEISNER, in his official capacity as
Oakland County Treasurer,

> *Defendant*,

OAKLAND COUNTY, MICHIGAN,

> *Defendant-Appellant*.

No. 26-1061

─────────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
Nos. 2:18-cv-14042; 2:20-cv-12230—Terrence George Berg, District Judge.

Decided and Filed: August 5, 2026

Before: KETHLEDGE, BUSH, and NALBANDIAN, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:** William H. Horton, John R. Fleming, GIARMARCO, MULLINS & HORTON, P.C., Troy, Michigan, for Appellant. Scott F. Smith, SMITH LAW GROUP, PLLC, Farmington Hills, Michigan, Mark L. McAlpine, Daniel J. Pifko, MCALPINE PC, Auburn Hills, Michigan, for Appellees.

KETHLEDGE, J., delivered the opinion of the court in which BUSH and NALBANDIAN, JJ., concurred. BUSH, J. (pp. 13–14), delivered a separate concurring opinion.

---

**OPINION**

---

KETHLEDGE, Circuit Judge.   In the two cases before us in this appeal, the plaintiffs brought claims under the Constitution's Takings Clause after Oakland County had foreclosed on their homes.  In both cases the plaintiffs were represented by attorney Scott Smith and a local firm called McAlpine PC; and in both cases the plaintiffs lost nearly every issue they litigated in the district court.   On appeal to this court, however—with the Pacific Legal Foundation representing the plaintiffs (save Marion Sinclair) pro bono—the plaintiffs won a victory that would eventually yield them a "global" settlement of $500,000.  *See Hall v. Meisner*, 51 F.4th 185 (6th Cir. 2022).

Yet, for litigating these claims, Scott Smith and McAlpine PC sought a fee award of more than $4.2 million, based on a purported 4,800 hours litigating the plaintiffs' claims concerning their four homes.  The district court eventually ordered a fee award exceeding $1.36 million.  In a companion case in the same district court—with the same plaintiffs' counsel, the same defendant, and a materially identical claim—Judge David Lawson wrote that "[t]he egregiousness of the excessive fee claim here warrants a severe discount against the gross amount of hours claimed."  *Taylor v. County of Oakland*, 2025 WL 40858, at *6 (E.D. Mich. Jan. 6, 2025).   For all the reasons described below, we conclude that the requested fee award here was even more egregious, and that it should have been reduced more than it was in the court's order awarding fees.   We therefore vacate the district court's order and remand with instructions to enter a reduced award.

I.

We have already described much of the relevant factual background for these cases in a published opinion.  *See Hall*, 51 F.4th at 188-89.  To summarize, Oakland County foreclosed on each of the plaintiffs' homes for the plaintiffs' failures to pay property taxes.  Each of their homes was worth more than the taxes owed on it, but the County refused to refund the difference to any of these plaintiffs.  They eventually brought two lawsuits—one known as *Sinclair*, the

other *Hall*—claiming, among other things, that the County's retention of the equity in their homes had violated the Takings Clause of the federal Constitution. The first lawyer to represent these plaintiffs was Scott Smith; about two years later, in early 2021, a firm specializing in construction law, McAlpine PC, joined as co-counsel.

Over the next twelve months, with this legal team in place, both cases were dismissed (by two different judges) for failure to state a claim. In early November 2021, the plaintiffs appealed the dismissal in *Hall*; about four months later, Marion Sinclair appealed separately. In the *Hall* appeal, the Pacific Legal Foundation—a national public-interest law firm specializing in cases involving property rights—agreed to represent the plaintiffs pro bono. In March 2022, the Foundation's Christina Martin filed a 64-page brief on the plaintiffs' behalf; four months later, she argued the case for the plaintiffs in our court. In October 2022, we held that, on "the facts alleged here, the County took the plaintiffs' property without just compensation, in violation of the Takings Clause." *Hall*, 51 F.4th at 196. About seven months later, in a case presenting materially identical facts, the Supreme Court unanimously reached the same conclusion. *See Tyler v. Hennepin County*, 598 U.S. 631 (2023).

Meanwhile, in the *Sinclair* appeal, the McAlpine firm filed a brief that, on the core takings issue, largely cut and pasted verbatim the briefing that the Pacific Legal Foundation had filed in *Hall*. In December 2022, based on our decision in *Hall*, we summarily reversed the dismissal of Sinclair's takings claim.

In both cases, on remand to the district court, Oakland County conceded liability on all the plaintiffs' takings claims. Thus, for the most part, that left only the question of damages—being the difference between the amount of the tax lien on each of the four homes, on the one hand, and the value of each home, on the other—for the parties to litigate in the district court. Rather than litigate that issue and wrap up the litigation, however, plaintiffs' counsel instead sought to have the district court certify each case as a class action. Certification of a class in these cases would have provided no benefit whatever to these five plaintiffs themselves; and meanwhile our decision in *Tarrify Properties, LLC v. Cuyahoga County*, on its face, all but precluded certification here. *See, e.g.*, 37 F.4th 1101, 1106 (6th Cir. 2022) (stating that, on materially similar facts, "a court must conduct an individualized, fact-intensive, and adversarial

process to determine the fair market value for each property"). Yet the McAlpine firm and Scott Smith proceeded to bill some 573 hours litigating the certification issue, before the district court in *Hall* (in January 2024) and in *Sinclair* (in January 2025) denied certification. Finally, in May 2025, the parties settled all the plaintiffs' claims for a total of $500,000.

With the litigation concluded, and the cases by then consolidated before a single district judge, the plaintiffs next sought an award of attorney fees. They sought approximately $4.2 million—which included some 1,600 hours billed by Scott Smith and the McAlpine firm while the Pacific Legal Foundation was representing the plaintiffs in *Hall* pro bono. The requested award also included the 573 hours spent pursuing the failed class-certification motions. Altogether the plaintiffs sought an award comprising more than 4,800 hours, billed by nine lawyers and a paralegal—which amounted to almost $2.1 million at the hourly rates (mostly $450 or more) sought by counsel. And that amount, the plaintiffs said, should be doubled (a "2.0 multiplier") because of the "excellent results" obtained in the litigation. The district court reduced the requested hours by 40% and reduced the multiplier to 1.1, which yielded an award of $1,361,476.51 in attorney fees. The County then brought this appeal.

## II.

We review the district court's award of attorney fees for an abuse of discretion. *See Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 618 (6th Cir. 2013).

A district court may award a "reasonable attorney's fee" to a "prevailing party" in a federal civil-rights suit. 42 U.S.C. § 1988(b). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). That number is known as the lodestar.

The determination whether hours were "reasonably expended on the litigation" calls for the exercise of "billing judgment." *Id.* at 433-34. "Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Id.* at 434 (internal quotation marks omitted). Thus, "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise

unnecessary." *Id*.

The record before us contains not a trace of any good-faith effort by plaintiffs' counsel to exclude excessive or unnecessary hours from their fee request for *Sinclair* and *Hall*. Rather than meet their own burden to demonstrate that their requested hours were reasonable, *Hensley*, 461 U.S. at 437, plaintiffs' counsel instead foisted upon the district court the burden of excluding literally thousands of hours from a request that was largely unreasonable. What Judge Lawson wrote about these same attorneys' fee request in *Taylor* applies with full force here: "The pervasiveness of the improper entries in the plaintiff[s'] billing ledger demonstrates the unreliability of vast swaths of an accounting where the plaintiff claims a cumulative total of more than 980 [in this appeal, more than 4,800] billable hours." *Taylor*, 2025 WL 40858, at *6.

How a district court should respond, when faced with a fee request that includes hours unreasonably billed, depends on the record before it. Sometimes, as in *Binta B.*, specific "categories of work" are unreasonable—say, hours spent working on a different case. 710 F.3d at 628. In that event, to the extent practicable, the court should deduct from the lodestar, up front, the specific number of hours spent on that category of work. *See id.* at 628-39. But other kinds of non-compensable hours—like hours included in billing records that are padded or vague—are harder to separate out from compensable hours. In that event, the court may "use estimates" to determine the reasonable hours expended toward a particular end. *Fox v. Vice*, 563 U.S. 826, 838 (2011).

A.

The County's overarching argument here is the same one our court largely agreed with in *Binta B.*—namely, that the district court should have deducted from the lodestar specific numbers of hours for "categories of work" that were non-compensable. 710 F.3d at 628. We consider these different categories in turn.

1.

The County argues that the district court should have excluded categorically the 573 hours that plaintiffs' counsel billed in pursuit of class certification in *Hall* and then *Sinclair*.

Those hours were unreasonably expended for two reasons. The first begins with *Hensley*'s rule that hours not properly billable to one's client are not properly shifted to one's adversary either. 461 U.S. at 434. Here, plaintiffs' counsel could never have properly billed these individual plaintiffs for those 573 hours; and these individuals were the only clients that counsel ever had in this case. Motions for class certification seek to extend recovery to unnamed class members, rather than to augment the recovery of the named plaintiffs themselves. Thus, work on motions for class certification is work on behalf of clients, so to speak, that counsel does not yet represent. In a case where counsel plans to seek a fee award under 42 U.S.C. § 1988, therefore, counsel seek class certification at their own risk. If the certification motion is granted, counsel might ultimately get paid for that work in their capacity as class counsel; but if the motion is denied, their clients remain only the individual plaintiffs in whose name the suit was brought. Here, the motions were denied; so counsel can bill neither those individuals, nor the County under § 1988, for time spent pursuing certification. *See Hensley*, 461 U.S. at 434.

A second reason is that the hundreds of hours spent litigating these motions for certification were in no sense "hours reasonably expended on the litigation[.]" *Id*. at 433. Denial of those motions was nearly certain from the outset. The homes of none of these plaintiffs were sold at a foreclosure sale; thus, for none of these plaintiffs was there already a specific surplus that they could claim as their own. Meanwhile—more than a year before counsel filed a motion for class certification in *Hall*, and almost two years before counsel moved for certification in *Sinclair*—our court held in a materially similar (indeed almost identical) case that certification was rightly denied absent such a surplus from a foreclosure sale. That is because—to determine the damages of each unnamed class member—"a court must conduct an individualized, fact-intensive, and adversarial process to determine the fair market value for each property." *Tarrify*, 37 F.4th at 1106. Individualized issues would thus swamp class-wide ones in the litigation. *Id*. at 1107.

Courts of appeals write opinions in part to head off meritless motions like these. As Judge Lawson observed in *Taylor*, the issues presented in these cases "were neither complex nor legally controversial, after the controlling decisions in *Hall* and *Tarrify* were handed down." 2025 WL 40858, at *6. The certification motions here were barely colorable, and the record

lacks any evidence that counsel filed them in hopes of seeking en banc or certiorari review of the rules we set in *Tarrify*. Thus—for reasons mostly legal in nature—all 573 hours spent litigating these motions should have been excluded from the lodestar.

2.

The County likewise argues that the district court should have excluded categorically some 189 hours that counsel spent seeking relief from defendants other than the County itself (namely the City of Southfield and several individual defendants). In *Binta B.*, as in this case, the plaintiffs sought an award of fees generated in litigation against parties other than the defendant—in that case, some plaintiff-intervenors. We held that, "even though defendants are liable for the successful claims against *them*, they are not responsible for paying for plaintiffs' litigation against intervenors." 710 F.3d at 635; *see also Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 761 (1989). The same rule should apply here: nothing in the incentive structure of § 1988, or in equity otherwise, supports making one defendant pay for litigation of the plaintiff's claim that another defendant has committed a legal wrong. The plaintiffs here counter only that, in the district court, the County had not yet tallied up the specific number of hours that the plaintiffs sought to bill the County for litigation against these other defendants. But the 189 hours number is undisputed in this appeal—so on remand the district court should exclude all those hours.

Finally, as to categorical exclusions, the County says that the district court should have excluded up front some 32.5 hours that plaintiffs' counsel billed to a "motion to reopen" that the plaintiffs never filed. The plaintiffs offer no response to this argument, and the record reveals no reason why the County should need to pay for any of that time. So the district court should exclude those 32.5 hours also.

B.

The County also argues that the district court should have reduced its fee award for other categories of work to a much greater extent than it did.

1.

The first such category is hours that Scott Smith and McAlpine PC claimed to have billed working on the two appeals to our court in these cases. About the litigation of those appeals, of course, this court has greater knowledge than the district court; and that is true for the appeal in *Hall* especially, since the panel adjudicating this appeal is the same one that decided *Hall*. Yet even with that knowledge of these appeals—or more to the point, because of it—the fee request that plaintiffs' counsel submitted for these appeals almost shocks the conscience. Christina Martin of the Pacific Legal Foundation represented the plaintiffs *pro bono* in the *Hall* appeal—in which we held that, on the facts alleged (which were themselves largely undisputed), the plaintiffs had a constitutional entitlement to relief. Our decision in *Hall* became binding precedent in this circuit; in the *Sinclair* appeal, decided later in a summary order, the panel simply followed suit. The Foundation's briefing in the *Hall* appeal stands wholly apart in quality from all the other briefing on behalf of the plaintiffs in these two cases; and in our court Ms. Martin also presented oral argument for the plaintiffs in *Hall*. True, the McAlpine firm represented Marion Sinclair in her appeal; but on the dispositive takings claim, the McAlpine brief largely cut and pasted the arguments that the Foundation had made in *Hall*. And true, Mr. Smith presented several minutes of oral argument in the *Hall* appeal; but suffice it to say that does not change our conclusions here in the least. All of which is to say that it borders on stupendous that Scott Smith and the McAlpine firm claim to have billed more than 1,600 hours on those appeals, at rates averaging well above $400 per hour, for a sum approaching $700,000. Indeed that claim powerfully impeaches the entire fee request in these cases.

"In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here." *Hensley*, 461 U.S. at 434 (cleaned up). No paying client would pay— and no counsel would properly bill—anything remotely approaching what the plaintiffs seek to charge the County for work on these appeals. Nor do counsel's billing records assuage any of these concerns. And with a denominator this egregious, percentage reductions swim against a rip tide. Nor will we remand this issue to the district court for still more litigation about fees; "[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox*, 563 U.S. at 838. Based on our knowledge of the litigation of these appeals, and our own detailed review of the billing records of plaintiffs' counsel (as inscrutable as they often are), our "firm conviction" is that no more than 75 hours, of the 1,643 hours that plaintiffs'

counsel billed to these cases while they were on appeal, were reasonably expended. *See Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 575 (6th Cir. 2019). On remand the fee award should be reduced accordingly.

2.

Of a piece, the County argues, were the hours billed by Mark McAlpine in these two cases. Mr. McAlpine billed 999 hours to these cases, at a rate of $625 per hour, for a fee in the sum of $624,468.75. Yet that left more than 3,800 hours that eight other attorneys had also billed in litigating the plaintiffs' claims concerning their four homes; and in the sands of this litigation, Mr. McAlpine's involvement has left hardly a trace. The County argues in its brief to our court: "Mark McAlpine never attended any proceeding in this case—not a motion hearing, status conference, deposition, oral argument in this Court or settlement conference. He never called Defendant's attorneys or emailed them. Nothing." Appellant's Br. at 20. The plaintiffs dispute none of these points in their brief on appeal, asserting instead that Mr. McAlpine "coordinated these cases with others, monitored related cases here in Michigan and around the country[,]" and—remarkably—otherwise "ensured efficiency through the four and a half (4.5) year life of this litigation[.]" Appellees' Br. at 26. Mr. McAlpine's own billing records are just as indistinct: a mass of entries, most of them for two to three hours apiece, about "review," "continued review," "considering" and "attention to" things that other people had done in the case. In the 999 hours of his billing entries, one searches in vain for a single instance of *terra firma* in the form of concrete work. One could argue that none of this time would be properly billed to a paying client, not least with all the hours that other lawyers were billing in these cases. Our firm conviction is that no more than 10 hours of Mr. McAlpine's time was properly billed. On remand the fee award should again be reduced accordingly.

3.

The County argues that the district court should have imposed a greater across-the-board reduction to account for pervasive overbilling (on legitimate types of work) and vague entries. A district court may reduce billed hours by a percentage to account for "vague, redundant, [or] block billed" time entries that render impracticable a specific determination of hours that are

compensable. *See Hubbell*, 933 F.3d at 575. Here, the district court found no end of vague entries and hours that "appear excessive considering the nature of the work described," which made "it more difficult for the Court to evaluate the reasonableness of the work done" and forced the court "to spend an inordinate amount of time attempting to understand what the entries related to." R. 158, PageID 4049, 4055; *cf. Taylor*, 2025 WL 40858, at *6-7 (observing, based on the court's review of billing records from the same plaintiffs' counsel, that "in light of the pervasive inclusion of illegitimate billings throughout the legal ledger . . . it is impossible to determine reliably the number of hours that reasonably and legitimately were expended by each lawyer who worked on the case"). That said, with the exclusion of all the hours specified earlier in this opinion, we have no quarrel with the district court's 40% reduction as applied to the remainder. Nor do we find the court's 1.1 multiplier to be an abuse of discretion.

B.

That leaves only the County's argument that the hourly rates approved by the district court were themselves excessive rather than "reasonable." *Hensley*, 461 U.S. at 433. About 3,300 of the 4,821 hours included in the plaintiffs' fee request were billed at rates of $450-$625 per hour. In the district court, the County argued that "the Court [should] use Judge Lawson's opinion [in *Taylor*] . . . as the appropriate framework. *Taylor* involved the same lawyers, the same Defendant and the same claim." R. 154, PageID 3620 (citation omitted). The County asserted further, "[u]se of an average rate of $300 as determined by Judge Lawson is appropriate." *Id.* at 3632. Yet the district court here seemed to regard the issue as forfeited, reasoning that, "without a specific argument addressing Plaintiffs' proposed rates, this Court believes the proposed hourly rates are appropriate." R. 158, PageID 4061.

Respectfully, the district court's omission to respond more specifically to the County's argument for a $300 blended rate, based on the reasoning in Judge Lawson's opinion, was an abuse of discretion. *See Garner v. Cuyahoga Cnty. Juv. Ct.*, 554 F.3d 624, 643 (6th Cir. 2009) (stating, in a fee-award appeal, that "we have found an abuse of discretion where a district court fails to explain its reasoning adequately or to consider the competing arguments of the parties") (cleaned up); *In re E. Palestine Train Derailment*, 160 F.4th 751, 763 (6th Cir. 2025) (same). Had Judge Lawson's reasoning on this point in *Taylor* been itself conclusory, the district court

here would have been within its discretion to consider the issue forfeited. But Judge Lawson's reasoning was anything but conclusory. He first observed—again, in a case involving the same lawyers, the same defendant, the same claim—that, "[u]nder the circumstances, the use of an average [*i.e.*, blended] hourly rate is more appropriate due to the deficiencies in the accounting that make it impossible to reach any measure of certainty in partitioning the allowable fees among the several lawyers employed." 2025 WL 40858, at *7. As to the blended rate itself, he continued: "The State Bar of Michigan's published Economics of Law Practice for 2023 reports a median hourly rate of $300 per hour for attorneys involved in civil litigation. Under the circumstances, that overall market average supplies a reasonable basis for calculation of the lodestar." *Id.* (citation omitted).

That reasoning strikes us as eminently reasonable. But again, to bring an end to this litigation about fees, and to afford a modest measure of deference to the district court on this point, we conclude that, on this record, a blended rate of $325 per hour, for all the hours reasonably expended in this litigation, is reasonable.

\*     \*     \*

The district court in this case was presented with the most unenviable task of sifting through billing records that were often inscrutable, due to their "block billing," and which pervasively included hours that were unreasonably billed. But we respectfully conclude—for reasons mostly legal in some instances, and based on facts largely undisputed, in others—that the district court's fee award amounted to an abuse of discretion in the various respects recited above.

The district court's January 12, 2026 Order Granting in Part and Denying in Part Plaintiffs' Motion for Attorneys' Fees is vacated. The case is remanded with instructions to do the following: (i) reduce the number of compensable hours in all the ways specified above, treating Mr. McAlpine's 10 compensable hours as ones not subject to the 75-hour appellate cap (*see supra* at 9-10); (ii) reduce the remaining hours by 40%; (iii) increase the remaining hours (after the calculations in (i) and (ii)) by the court's 1.1 multiplier in this case; and (iv) then enter an award compensating plaintiffs' counsel at a blended hourly rate of $325 for the hours

resulting from these calculations. The court may again divide the award between Scott Smith and McAlpine PC as the court sees fit. The plaintiffs are not entitled to any fees for litigation of this appeal, having lost on nearly every question presented. The court may again award $5,108.96 in litigation expenses.

———————————

## CONCURRENCE

———————————

JOHN K. BUSH, Circuit Judge, concurring.  I fully concur with the majority's decision to make further cuts to the attorneys' fees award in this case.  Though the reductions may seem drastic, I respectfully submit that they are relatively lenient to plaintiffs' counsel given other circumstances relevant here.  One could conclude, in fact, that we do not go far enough.

As I see it, we could have made two additional across-the-board cuts to the fees award because we have the right to exclude fees unnecessarily incurred.  *See The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 702 (6th Cir. 2016).

*First*, we could have completely excluded all fees incurred after November 7, 2024.  On that date, the record evidence undisputedly shows that defendants offered to give plaintiffs everything they were asking for.  But plaintiffs' counsel never told their clients about those offers, which likely would have been accepted.  Thus, counsel's failure to inform their clients about the settlement unnecessarily dragged this case out for another eight months.

*Second*, there is a strong argument plaintiffs' counsel should have taken a massive haircut (as much as 80%, in my view) for all hours billed after May 25, 2023.  That was the date the Supreme Court decided *Tyler v. Hennepin County*, which held that retaining the overage after a tax foreclosure sale violated the Takings Clause.  598 U.S. 631, 639 (2023).  At that point, this case was all but over.  *Tyler* conclusively established that plaintiffs were entitled to the relief requested in the second amended complaint: compensatory damages for an unconstitutional taking.  All that was left to do at that point was for plaintiffs to move for summary judgment on liability and then conduct whatever minimal discovery was required to calculate damages.

But plaintiffs' counsel did not do that.  Instead, they filed a third amended class action complaint (which set off a long cascade of otherwise unnecessary motions practice) and litigated the doomed-to-fail motion for class certification.  Some of the hours spent after the Supreme Court decided *Tyler* were plainly necessary because they would have been spent on discovery and the aforementioned summary judgment motion.  But there was no need to continue litigating

this case so aggressively after the Supreme Court rendered victory for the plaintiffs all but certain. Thus, up to 80% of that time could have been cut.

"When a party submits a fee petition, it is not the opening bid in the quest for an award. Rather, it is the duty of the requesting party to make a good faith effort to exclude hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Clemens v. N.Y. Cent. Mut. Fire Ins. Co.*, 903 F.3d 396, 403 (3d Cir. 2018) (first quoting *Fair Hous. Council of Greater Wash. v. Landow*, 999 F.2d 92, 97 (4th Cir. 1993); and then quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)) (cleaned up). Plaintiffs' counsel did not fulfill that duty—not even close. Instead, they carried out a transparent attempt at bill-padding without providing any benefit to their clients or the public more broadly.

Defendants generally alluded to my concerns in their appellate briefing, but they did not specifically ask for further reductions based on the grounds noted above.[1] I thus understand the court's opinion to be treating them as forfeited, rather than rejecting their consideration in this or future cases. *See, e.g.*, *Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 256 (6th Cir. 2018) ("Time, time, and time again, we have reminded litigants that we will treat an argument as forfeited when it was not raised in the opening brief." (quoting *Golden v. Comm'r*, 548 F.3d 487, 493 (6th Cir. 2008)) (quotation marks omitted)). But these additional considerations nonetheless confirm that the court is right to sharply cut the fee award. Indeed, it could have gone even further, and plaintiffs' counsel should consider themselves fortunate to be awarded even the amended amount.

---

[1]For example, defendants asked for an 80% across-the-board reduction after removing the hours that we deem are not compensable. *See* Appellant's Br. at 21 ("After considering the massive amount of overbilling, vague entries, work on other cases, failure to inform the Plaintiffs of settlement offers, parties dismissed on appeal and other factors, the District Court should have reduced those hours by 80% to 785 hours and allowed a blended rate of $300/hour.") And defendants also complained about plaintiffs' counsel's failure to inform their clients of the settlement offers. *See id.*; *id.* at 7 ("Plaintiffs' counsel did not inform their clients of settlement offers for the fully amount of their claims and, for more than two years, needlessly piled on fees."); *id.* at 17–19 (arguing that the failure to notify plaintiffs of the settlement offer warranted cutting down the fees award).